morning your honor my name is Brian Michaels it is a little odd not looking up when I speak with you but here we are I've come over the years to conclude that it's best to just come out and say that I'm blind in my left eye so when I move my head to speak that's the only reason why very well I would like to begin by asking the court to imagine if you will a law enforcement officer has sworn out an affidavit for an arrest warrant alleging that I was driving down city streets at rates of speed of upwards of 60 miles an hour I was running red lights I was jumping stop signs I was causing vehicles bicycles and pedestrians alike to have to get out of my way he gets that arrest warrant he arrests me for reckless driving and several counts of reckless endangerment he decides not to tell the judge that in fact I am an ambulance driver and I had my lights and sirens on I was taking a patient to the hospital certainly that officer would be liable for false arrest that is very much the case you have before you in addition to those facts the officer who swore out the warrant has said that he is the most biased against me than any law enforcement officer he has said that it would be a Christmas gift for him to have me arrested and with those facts certainly that officer would be liable for false arrest and those facts are very very similar if not exactly the same as the facts in this case. Well counsel we have the problem of the grand jury in essence finding that there was probable cause and in the memo we talked about and the defense raised this we talked about how a grand jury is much like any other warrant in that if the indictment was obtained through false information either by omission of exculpatory facts or commission of false facts then that indictment can be collaterally attacked later on it is not a shield and we said that in our brief at Reciting Rebirth at docket 9-1 page 27 and it is supported by Harris at docket 9-1 page 28. The officers testified on the deposition that testimony with the grand jury was consistent with their reports which is ER 68 for defendant Kelly's deposition and ER 48 for defendant Welch's deposition and if it is consistent with their reports then they omitted an enormous amount of exculpatory evidence and unlike the ambulance case that I just did analysis that I just made they included a lot of false statements incriminating statements. Indeed one officer can be said to ask a trier of who are you going to believe me or your lying ears because his testimony about what happened in the trial court was materially and significantly different than what the court recorded it to be and he continued to maintain that his version was correct and not the recorded version. Who are you going to believe me or your lying ears. So not only is there an omission of exculpatory evidence which would be an omission of information and if that's what happened with the jury the case law is fairly consistent that that indictment can be collaterally attacked. Now another huge difference between the ambulance driver and my client Mr. Willis is that my client Mr. Willis is a criminal defense attorney and these are law enforcement officers who are more biased against him than anyone and would see it as a Christmas gift to have his a century ago the U.S. Supreme Court issued its ruling in Gideon recognizing a defendant's right to competent and effective assistance of counsel. These acts by these law enforcement officers have a profound effect on that constitutional right. By chilling an attorney's ability to do his or her job for fear of false accusations of arrest for fear of having to defend oneself as allowed to go on abated chill the effective assistance of counsel because counsel will now be inserting his or her interest in not being falsely accused of a crime into his or her defense of his or her client. The implications of this like I say I believe are very profound for that reason. It kind of undermines the How do you deal with the fact that the mother of the youngster accused of the alcohol violation appeared before the grand jury and as far as this record is concerned she testified consistently throughout all of this and her testimony alone is the most condemning part of the evidence against your client. Isn't that true? I would disagree with the latter part of your honor's comments in terms of regard that and tell me how you deal with that phenomenon that this witness testified that your client told her to go out and tell the witnesses to do certain things and they did it. How do you deal with that? Well this is a probable cause analysis and in a civil manner such as this in 1983. No, wait a minute. I am answering your question. Alright, go ahead. It's up to the jury to determine whether or not this probable cause ultimately and because of the summary judgment motion to determine probable cause you've got to view the evidence and the like most favorable to my client because he is the non-moving party. Viewed in the evidence most favorable to my client all of these speculation, innuendo, or miscommunication at best if viewed in the light most favorable to my client because they are in direct conflict with every action my client has taken throughout these proceedings. He immediately told the judge where the witnesses would be found. He left a witness on the bench to tell the officer in case he came to the bench where the witnesses would be found and the witnesses in fact were found exactly where the officer would have looked for them in any event. So, gone against my the actions of this plaintiff to determine whether he committed a crime nothing he did committed a crime. Now at worst for my client if you view those statements, those statements in a summary judgment motion are just a contest of facts which do not prevent this case from going to the jury to determine probable cause. It's just facts that they have to analyze in conflict with other facts. Now what I want you to do is focus on the testimony of the lady I've identified and as far as this record is concerned she has been consistent and she for all we know told the grand jury that your client told her to go outside and tell these two witnesses to leave the building. Now how do you deal with that? And again the witnesses were found where everybody including the trial judge and a former district attorney said they would be found but the other point is again it's a summary judgment motion so it can't are there facts sufficient to have a jury find that there was not probable cause and those facts would be the very actions of the my client Mr. Willis to determine whether he did anything and focusing on that telling them to go stand outside the courthouse is analogous to focusing to on my metaphor that I did drive 60 miles an hour down city streets and I did run red lights and I did jump stop signs but that's viewing the evidence and the light most which I think the defense tried to do and of course the trial judge seemed to do in pursuing the same line of reasoning is that well if you take away all the exculpatory evidence and all the lies that the defendants told then yes he did tell these two that this woman to tell these two witnesses to stand outside the courtroom in a vacuum I drove 60 miles an hour on city streets running red lights and jumping stop signs but when you look at the totality of the standard that you're supposed to apply they knew that he did nothing he meaning Mr. Willis did nothing to execute this criminal act or indicate in any way that he had any intention what do we do with Detective Boring's report that says that your client said I don't want them to be able to find them talking about the witnesses again at best in the light most favorable to the non-moving party that's just hearsay and maybe misunderstanding or miscommunication it doesn't really survive when you look at the actions of Mr. Willis his actions as we know them to be unarguably had no indication that he committed a crime at worst these statements by these witnesses are hearsay innuendo misunderstandings and speculations you're telling us that the mother of this youngster who was instructed by your client to go outside the courtroom and tell these witnesses to leave the building that somehow there's something foul about what she said foul no your honor or false or exaggeration or this grand jury heard the lack of exculpatory evidence from the two officers who testified I mean he one officer told them what happened in the trial consistent with his report and consistent with his interrogatory which was included in the briefs which is direct conflict was what the trial record showed that's a good reason for him to be found not guilty but it we're concerned about the validity of this indictment and the warrant that was issued pursuant to it correct and so you have this mother of the of my client's client saying I have these five minutes left again it's a summary judgment motion you have viewed in the light most favorable to the plate for the non-moving party the case gets to go to the jury and that at worst for my client it's a contest of facts and that's a fact that the jury has to consider against the fact that they were only told to go where everybody who's ever worked in that courthouse knew to find witnesses when they couldn't find them I have my time is up I'm very nice council you have about three and a half minutes reserved for rebuttal thank you we'll hear from the police mr. Warren good morning your honors may it please the court I am Gerald Warren on behalf of the defendants I have with me lieutenant James Welch and also sergeant Brad Kelly who have a great interest in the outcome of this case because they tried to do what was the right thing there are a few explanations for why a criminal defense attorney with 25 years experience would tell two state's witnesses the only two who are there on subpoena to go through an intermediary through the minor's mother go have the girl stand out in front of the courthouse I don't want them to be able to find him and that's where mr. Michaels scenario breaks down the ambulance ambulance driver had a valid legal reason for doing what he's doing in this case a criminal defense lawyer has no business telling two of the state's witnesses the very two witnesses who were convicted his client in the justice court that this was an appeal to the circuit court the very two witnesses who convicted his client are told to go out in front I don't want them to be able to find him and what mr. Willis strikes me about that episode is that council might have thought that he could ask not his witnesses but witnesses for the state to do that is it possible he was confused somehow well I think that was a post-incident explanation your honor I doubt at the time since the the judge's letter that came out of Justice Court said I find mr. the plaintiff mr. Carson Kelly I find him guilty because of the testimony of these two witnesses so an attorney with 25 years experience who shows up to court and says I don't know who the witnesses are I just told my clients mother to go out tell him to go outside doesn't really pass the blush test or if it does it's a great statement about the abilities of that attorney but this is textbook police work what these officers did this is what we want them to do they saw a crime a class C felony tampering with a witness the person knowingly induces or attempts to induce a witness to be absent from an official proceeding to which the person had been legally summoned they witnessed a class C felony based upon the statement of the girls as they were coming back in they went out sergeant Kelly went out found the two girls as they're coming back in you know why were you out here we were told to make ourselves scarce I think was the initial statement and then they go back in the witnesses do testify the client is convicted and and then they say you know they compare notes and say what happened here and and they go down and talk to the deputy district attorney mr. eater so they go down they pursue that step they don't just immediately arrest the criminal defense attorney they consult with the deputy district attorney and he says go do an investigation this may be a bar matter maybe it's a criminal matter do the investigation so they conduct the investigation and and then the outside district attorney takes it to a grand jury listens to the whole court proceeding decides there's sufficient probable cause grand jury then decides there's probable cause this is textbook police work is better than what the law requires and they did everything that's required of it it's also textbook work as to what not to do as a criminal defense attorney you have no business talking to any witnesses to go anywhere and particularly ones that are unsubpoenaed unsubpoenaed for the state they argue primarily as you noted judge Levy they argue reasonable doubt not really probable cause the crime was complete at the time that they tell the witnesses to leave the area I don't want them to be found so all this later information about most bias and Christmas gift that's after the crimes been committed probable cause is an objective determination they had objective evidence to believe that that crime had been committed and there's just no valid reason for a defense attorney with this experience to even attempt to interfere with the state's case as the court is well aware probable cause is a fair probability that a crimes been committed these officers did what we want them to do and unless there are any questions I'm a little uncertain about whether or not the record clearly supports the contention of the defendant I mean the plaintiff in this case that he informed the court where the witnesses were now is there was there a stenographic record of that of that there was your honor there's about a two and a half three minute gap and the courtroom when when Sgt. Kelly who had just testified he just left those witnesses outside the courtroom he comes in and testifies Lt. Welch then calls the next witness Sgt. Kelly says he'll go get the girls they're waiting for about two and a half three minutes in there inside the courtroom and then Mr. Willis either because he got cold feet or whatever he says who are you trying to get which witness what witness are we waiting for and Lt. Welch said Harley Parmeter the judge said Maddie Phillips is I think who we're waiting for then Willis and this is just an admission your honor it's not exculpatory evidence Mr. Willis says we had her go and stand out in front of the courthouse so you may want to go there to get her that's not exculpatory evidence that's an admission of his plan I told those two witnesses who are under subpoena to you officer to go stand out in front yeah he admits it but that doesn't mean the the judge was talking to the others who are getting ready to go forward this is an MIP trial and so the judge is talking to somebody else Mr. Willis says he needs to be somewhere by four o'clock and so the case but the gap that is referred to is not a gap that affects what what Mr. Willis said to the judge about the location of the witness that's correct okay it's not a gap in that in it's only a sense of normally have your next witness ready and there's that delay it was available to the prosecutor most importantly she listened to it before she decided to take it to a grand jury and then it was available to the grand jury yes your honor no further questions thank you thank you your honors mr. Michaels you have some reserve time first to begin at the end of mr. Warren's remarks the deputy district attorney Silverman testifying her deposition that she did not listen to the recording prior to grand jury that the recording was not played in front of the grand jury that the only evidence about what happened in the trial court was by deputy Welch who's essentially saying who you're going to believe me or your lying ears because when the record is transcribed in the complaint and it's transcribed throughout the briefs and it's in the ER there is no gap here when he was told when said who's the next witness the witness was named he said oh I had her stand outside the courtroom if you there was no gap at all if you read at once er 116 117 deputy Kelly's version of how he found the witness he will tell you that he came out of the courtroom he saw mr. Slavinsky on the bench and mr. Levinsky told him that the witnesses were outside which is what he was left there to do if you're going to secret somebody away from appearing he did everything he could to not secret these people away from appearing and deputy Kelly even testifies that he went to where everybody goes when they're not where they're on the bench waiting to smoke a cigarette or just get some air right in front of the steps it's hard to imagine if you read deputy Kelly's version of events of obtaining these finding these witnesses where how and why this crime was supposed to have been committed had mr. Willis never said anything to these witnesses and they went out to smoke a cigarette the version of events would be absolutely the same there is no evidence that he secreted these witnesses away from anyone or in any way influence them to not appear no evidence whatsoever other than the who you're going to believe me or your lying ears the idea that they were told to be scarce which was ultimately found to be not true the idea that they that the witnesses disappeared is just an exaggeration that began from the very instant that this trial record occurred you remember that this is a probable cause summary judgment motion and it's appropriate summary judgment on behalf of the moving party is appropriate only if no reasonable jury could find that the officers do not have probable cause the the the deceptions from the very beginning the embellishments the exaggerations in any context of facts before of trial fact the three most important elements are credibility credibility and credibility and when you start lying and you start getting caught lying and you everything you say now becomes unreliable to the trier of fact then we certainly have at least the ability to go to the grant to a jury to say there was no probable cause here everything he did was to not secret witnesses away but to ensure that the officers would immediately know where to find these witnesses other than the defendants there is absolutely no evidence that he did anything to secret anyone away from appearing in this proceeding thank you counsel the case just argued will be submitted for decision
judges: Goodwin, O'scannlain, Leavy